UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

CARLOS C. CHARLES,

                          **Petitioner,**

   V.                                               05-CV-274

UNITED STATES OF AMERICA,

                          **Respondent.**
_____

**THOMAS J. McAVOY,**
**Senior United States District Judge**

## DECISION & ORDER

**I. INTRODUCTION**

On January 19, 2006, the Court issued a Decision & Order that denied and dismissed Petitioner Carlos C. Charles's petition brought pursuant to 28 U.S.C. § 2255. See January 19, 2006 Decision & Order [dkt # 9]. In that petition, Petitioner sought relief based upon: 1) an allegation of ineffective assistance of counsel under the Sixth Amendment; 2) an alleged violation of the Speedy Trial Act, 18 U.S.C. § 3161(c)(1); and 3) an allegation that he was denied his constitutional rights to a jury trial and due process because his sentence, based upon the United States Sentencing Guidelines, took into account facts that were not presented to the jury. Petitioner now moves for reconsideration of the January 19, 2006 Decision & Order, contending that the Court erred because it improperly dismissed Petitioner's claim of ineffective assistance of counsel without a hearing.

**II. STANDARD FOR RECONSIDERATION**

"The standard for granting [a motion for reconsideration] is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked-- matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." Schrader v. CSX Transp., Inc., 70 F.3d 255, 257 (2d Cir. 1995); see also Eisemann v. Greene, 204 F.3d 393, 395 n. 2 (2d. Cir 2000)(To sustain a motion for reconsideration, Petitioner "'must demonstrate that the Court overlooked controlling decisions or factual matters that were put before it on the underlying motion.'" )(quoting Shamis v. Ambassador Factors Corp., 187 F.R.D. 148, 151 (S.D.N.Y. 1999)); Polanco v. United States, 2000 WL 1346726, at *1 (S.D.N.Y. September 19, 2000); Califano v. United States, 1998 WL 846779, at *1 (E.D.N.Y. September 4, 1998). "The high burden imposed on the moving party has been established in order to dissuade repetitive arguments on issues that have already been considered by the court and discourage litigants from making repetitive arguments on issues that have been thoroughly considered by the court [and] to ensure finality and prevent the practice of a losing party examining a decision and then plugging the gaps of the lost motion with additional matters." Nowacki v. Closson, 2001 WL 175239, *1 (N.D.N.Y. Jan. 24, 2001) (Munson, J.) (internal citations and quotations omitted). Petitioner "may neither repeat 'arguments already briefed, considered and decided,' nor 'advance new facts, issues or arguments not previously presented.'" In re Application of the United States, 396 F. Supp. 2d 294, 301 (E.D.N.Y. 2005) (quoting Schonberger v. Serchuk, 742 F. Supp.108, 119 (S.D.N.Y. 1990)); see also Shamis, 187 F.R.D. at 151 ("[T]he court must not allow a party to use the motion to reargue as a substitute for appealing from a final judgment. Therefore, a party in its motion for reargument may not advance new facts, issues or arguments not previously presented

2

the court.")(citations and internal quotation marks omitted).

## III. DISCUSSION

Here, with one exception, Petitioner merely raises the same claims that were already briefed, considered, and decided in the previous motion, simply re-arguing the same issues that were considered on the underlying motion. See generally Pet.'s Post-Judgment Motion to Vacate.[1] The one exception concerns an argument by Petitioner that the Court misconstrued the facts on the motion. In this regard, Petitioner contends that the Court erred when it addressed the argument that counsel was constitutionally ineffective because counsel refused to investigate and present an alibi defense based upon a motel receipt (Pet. Ex. A).

In addressing this claim of constitutional ineffectiveness, the Court held in the January 9, 2005 Decision and Order:

> Petitioner also asserts that counsel was constitutionally ineffective for failing to investigate and present an alibi defense based upon a motel receipt (Pet. Ex. 1). This appears to be a dubious proposition because the motel receipt is nothing more than a stub containing little information and indicates, at most, that the Petitioner was at a motel in Jamaica, New York at some time on April 12, 1994.[2] The Second Superseding Indictment charges, *inter alia*, that on April 12, 1994, Petitioner, or one of 13 alleged aider and abetters, distributed cocaine in Sheions bar in Binghamton,

---

[1] For instance, Petitioner argues on reconsideration that his counsel was ineffective because he did not go to the "scene of defendant's alleged crimes" to locate potential witnesses and/or interview potential witnesses whose names had been given to counsel by petitioner, or hire an expert to track down these potential witnesses. Pet.'s Post-Judgment Motion to Vacate, pp. 4-5. The Court previously addressed and rejected this argument. See 1/19/06 Dec. & Ord., pp. 4-8. Petitioner presents no new evidence that was not available previously that would alter the outcome of this decision, but rather states that the Court's holding is "unbelievable" and that it "defile[s] the meaning of judicial review." Pet.'s Post-Judgment Motion to Vacate, p. 4.

Similarly, Petitioner rehashes his previous argument that his counsel was ineffective for failing to subpoena a witness named Tattoo Pittman. Again, Petitioner asserts nothing new but merely tries to renew his argument. As the Court previously held, the claim fails on both prongs of the Strickland test. See 1/19/06 Dec. & Ord., pp. 8-9.

[2] The motel receipt contains only the date "4/12," the year is not written on it. [Footnote 1 in the 1/19/06 Dec. & Ord.].

3

New York. See 2nd Sup. Indictment, Count 27.  Apart from the fact that the motel receipt does not exclude the possibility that Petitioner drove to Binghamton after registering at the motel, Petitioner presents a sales receipt that he claims is from a jewelry store in Johnson City, New York. See Pet. ex. 1.  According to Petitioner, the sales receipt establishes that he purchased jewelry from this store on April 12, 1994.  Johnson City is less than a 10 minute drive from Binghamton.  Thus, Petitioner's own evidence establishes that he was in the Binghamton area at some point on April 12, 1994. Given this evidence,  it was not below an objective standard of reasonableness for his attorney to decline to pursue this purported alibi defense from the motel receipt. See United States v. Romero, 1993 WL 485677, at *7 (S.D.N.Y. Nov. 22, 1993)(An attorney is under no obligation to investigate every line of defense a defendant suggests, and, instead, "an attorney is required only to make a reasonable decision about whether to investigate a particular line of defense based upon the overall defense strategy."), aff'd, 54 F.3d 56 (2d Cir. 1995); Munoz v. Keane, 777 F. Supp. 282, 288-89 (S.D.N.Y. 1991)("Given the overwhelming evidence that [petitioner] participated in the drug transaction at issue, it was reasonable for defense counsel to conclude, as a strategic matter, that presenting testimony of the alleged alibi witnesses would be damaging to [petitioner's] case."), aff'd sub nom Linares v. Senkowski, 964 F.2d 1295 (2d Cir. 1992); Sanchez v. Scully, 613 F. Supp. 1065, 1068 & n. 5 (S.D.N.Y. 1985)(denying habeas relief for failure to call alibi witness; decision whether to present an alibi witness was a tactical choice which did not rise to the level of a constitutional violation).

\* \* \*

Further, given the overwhelming evidence of Petitioner's guilt, United States v. Sapia, 2002 WL 620483, at *4 (S.D.N.Y. April 18, 2002),[3] he cannot satisfy the second prong of the Strickland test with regard to any of counsel's alleged failures. See [Strickland v. Washington, 466 U.S. 668, 697 (1984)] ("If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed."); United States v. O'Neil, 118 F.3d 65, 72-73 (2d Cir. 1997). Indeed, as the Second Circuit noted:

> The evidence of Charles's participation in Joyner's drug organization is overwhelming.  Joyner and 18 former coconspirators testified that Charles participated in Joyner's drug trafficking organization.  Murzi,

---

[3] In deciding a Section 2255 petition without a hearing, "a district court may rely on its own familiarity with the case and deny the 2255 motion where the motion lacks 'meritorious allegations that can be established by competent evidence.'" United States v. Sapia, 2002 WL 620483 at *4 (quoting Stokes v. United States, 2001 WL 29997, at *2 (S.D.N.Y. Jan. 9, 2001)). [Footnote 4 in the 1/19/06 Dec. & Ord.].

>  a police informant, testified that he purchased drugs from Charles at
>  Sheion's, and a tape recording of his conversation with Charles was
>  played for the jury. The jury also heard evidence of Charles's guilty
>  plea to a state drug offense that occurred at Sheion's in June 1994.

Joyner I, 201 F.3d at 76.

Petitioner's conclusory claims of unpreparedness or failed tactical decisions are insufficient to sustain his burden on the second prong of the Strickland test. See Slevin v. United States, 1999 WL 549010 at *5 (S.D.N.Y. July 28, 1999)("Petitioner's conclusory allegations that counsel evinced 'a general lack of preparation' do not demonstrate that absent the alleged errors, the outcome of the trial would have been different. Petitioner has not elaborated on how counsel's alleged general lack of preparation prejudiced the outcome of his trial. Accordingly, such purported lack of preparation cannot be deemed ineffective assistance of counsel."), aff'd, 234 F.3d 1263 (2d Cir. 2000).

1/19/06 Dec. & Ord., pp. 5-8

Now, Petitioner argues that the Court erred because the jewelry store receipt dated April 12, 1994 he had as part of Exhibit A (Ex. A is a photocopy of a motel receipt and a receipt for a gold earring) was not from Henry Wilson Diamonds in Johnson City, New York, but rather from "a boutique" in New York City. Perhaps the Court's confusion resulted from the fact that the "receipt" purportedly from the New York City boutique contains no printed information on it (such as where it is from),[4] and from Petitioner's argument in his moving Memorandum of Law.[5] Nonetheless,

---

[4] The exhibit appears to be a "form receipt" similar to that which can be purchased in any office supply store. There is *no information* on the receipt identifying the name or location of the store, and only handwritten information setting forth the date and indicating that the receipt was for a gold earing sold to Melvin Bethea (Petitioner's alias).

[5] In his Supporting Memorandum of Law, Petitioner did not address the gold earring receipt when he first argued that counsel was ineffective for failing to present an alibi defense regarding April 12, 1994, see Pet. Supp. Mem. L. p.4-5. However, later in his Memorandum of Law he argues:

> The receipt of 4/12/94 is actually the stub portion of the motel receipt; the top portion of that stub
> would have held other relevant information, such as the name of [*sic*] motel clerk that was on duty at

(continued...)

5

even assuming that the Court understood in January when it issued its Decision and Order that the receipt was purportedly from some unnamed boutique in New York City, the constitutional ineffectiveness argument would still have been rejected for the reasons set forth in the January 19, 2006 Decision and Order as quoted above.  Accepting that Petitioner presented his counsel with a receipt from a motel *and* a jewelry store in the New York City area from April 12, 1994, his claim still does not satisfy either prong of the Strickland test.  The receipts do not exclude the possibility that Petitioner drove to Binghamton after transacting business in New York City and then committed a drug transaction, nor do they exclude the possibility that Petitioner consummated a drug transaction in Binghamton on March 12, 1994 through one of his 13 alleged aider and abetters.  Therefore, counsel may have had tactical reasons not to pursue the purported alibi defense and Petitioner has not overcome the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689; see  01/19/06 Dec. & Ord. pp. 6-7 (and cases cited therein).

Further, even assuming, arguendo, that Petitioner could satisfy the first prong of the Strickland test, his claim still fails under the second prong. See Strickland, 466 U.S. at 694 .  Given the overwhelming evidence of Petitioner's guilt,  Petitioner has not shown that there is a reasonable probability that, but for counsel's unprofessional error in this regard, the result of the proceeding

---

[5](...continued)
the time, check-in time and checkout time, etc. The top portion of the stub would have remained on file at the motel, located in New York City, on Rockaway Blvd.  In an effort to compound counsel [*sic*] ineffectiveness defendant will submit one of the receipts that subsequently became part of a civil litigation for its probative value. See: Attachment (6) attached to Ex. A, receipt from Henry Wilson Diamonds located on the Oakdale Mall, Johnson City, New York.

Pet. Supp. Mem. L. p. 9.  The Henry Wilson Diamonds receipt is dated 5/11/94, and, therefore, has no apparent relevance to his argument that he was in New York City on April 12, 1994. The Henry Wilson Diamonds receipt is on the page immediately after the motel/gold earring receipts.

would have been different.  Id.; see 01/19/06 Dec. & Ord. pp. 7-8.  The existence of a second receipt purportedly from April 12, 1994 does not change this conclusion.  See Strickland, 466 U.S. at 695-96 ("a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support").  Thus the claim fails on both prongs of the Strickland test.

No hearing is required on this or the other issues raised by Petitioner because, for purposes of the Court's analysis, it accepted as true the factual allegation presented by Petitioner but found that the claims nevertheless failed as a matter of law.

**V.  CERTIFICATE OF APPEALABILITY**

Finally, given that Petitioner has reopened the matter through his motion for reconsideration, the Court takes the opportunity to consider whether or not he is entitled to a Certificate of Appealability.  See  United States v. Cole, 2005 WL 3454322, *4 (E.D.N.Y. Dec. 7, 2005)(citing cases for the proposition that a district court may *sua sponte* decide whether a COA should issue in a habeas petition.).   The Court finds that Petitioner presents no viable issues upon which reasonable jurists could debate whether: (a) the sentence was imposed in violation of the Constitution or laws of the United States; (b) the Court was without jurisdiction to impose such sentence; (c) the sentence was in excess of the maximum authorized by law; or (d) the sentence is otherwise subject to collateral attack.  Therefore, a Certificate of Appealability pursuant to 28 U.S.C. § 2253 is denied**.** See Miller-El v. Cockrell, 537 U.S. 322, 123 S.Ct. 1029, 1039-1040 (2003); Slack v. McDaniel, 529 U.S. 473, 484 (2000); Barefoot v. Estelle, 463 U.S. 880, 893 (1983).

## V. CONCLUSION

Petitioner's motion for reconsideration is **GRANTED** in part, the matter is reconsidered as set forth above, and Petitioner's motion pursuant to 28 U.S.C. § 2255 is **DENIED AND DISMISSED**. A Certificate of Appealability pursuant to 28 U.S.C. § 2253 is also **DENIED**.

**IT IS SO ORDERED.**

Dated: April 26, 2006

*Thomas J. McAvoy*
Thomas J. McAvoy
Senior, U.S. District Judge